JACKSON *v.* SANFORD.

4-7665 187 S. W. 2d 945

Opinion delivered June 4, 1945.

*Kirsch & Cathey,* for appellant.

*Harry Neelly* and *Elmo Taylor,* for appellee.

McHANEY, J. The late John S. Sanford died testate in Searcy, Arkansas, on March 11, 1938. His wife predeceased him, she dying on February 17, 1937. He was survived by six children, four of whom are still living and are the appellees here. Two, Stephen Wyatt Sanford and Ollie May Hudson, died on July 20th and October 9, 1944, respectively, without issue. Appellant, Martha Sanford, is the widow of Stephen Wyatt Sanford, and is the sole devisee and legatee under his will which was admitted to probate shortly after his death.

On December 21, 1944, appellant, Martha Sanford, executed and delivered to the other appellant, A. W. Jackson, a mortgage on her individual one-sixth interest in and to the NW SW 16-16-8, White county, which was owned by said John S. Sanford at the time of his death, and which interest, supposedly, had passed to her husband under his father's will and then to her under her husband's will.

Appellees brought this action against appellants to cancel said mortgage as a cloud on their title and to adjudge them to be the owners of said land. This appears to be a test suit under the will of said John S. Sanford, since the title to a large amount of other real and personal property depends upon the construction to be given to his said will. Only two clauses of said will are involved which are: ''Second. I do hereby devise, give and bequeath to my beloved wife, Willia Alice Sanford, all of the property, both real, personal and mixed, of which I shall die the owner or seized and possessed of, that she to have and to hold the same with full and com-

plete power to sell and dispose of any part thereof, either real, personal or mixed property, and to use the same for the benefit of herself and our children hereinafter named, and my said wife shall have full and complete power, by and with the aid and management of my executors hereinafter named, to sell and dispose of said property for reinvestment, or for any other lawful purpose which she may desire to make of the same, and that she shall have the right to give and bestow upon any one or all of our children hereinafter named such sums of money or property as to her may seem right, proper and just. Third. At the death of my beloved wife, I direct, devise and bequeath all of said property remaining and undisposed of by her shall be divided equally, to share and share alike, between our children, as follows: Stephen Wyatt Sanford, Ollie Mae Hudson, Florrie Sanford, Robbins S. Sanford, Sloan M. Sanford and John William Sanford; and in the event that either of said children shall die without issue, then the interest of said child so dying shall go to the said children living, to share and share alike.'' This will as also that of Stephen Wyatt Sanford was copied in the complaint, and it was alleged that under the last clause in the third paragraph of the will as quoted above, Stephen Wyatt Sanford took only a determinable or contingent fee in his share of his father's estate, and that, since he died without issue, his share would go to the remaining children, share and share alike. Appellants demurred to this complaint on the ground that it did not state facts sufficient to constitute a cause of action. The court overruled the demurrer, appellants declined to plead further and the court entered a decree that the interest of Stephen Wyatt Sanford, deceased, in the lands and property of his father terminated on his death without issue, and that appellant, Martha Sanford, took no interest therein under the will of her husband. The mortgage was cancelled as a cloud on the title of appellees. This appeal followed.

The parties appear to be in accord on the fact that, by reason of the death of Willia Alice Sanford prior to the death of her husband, the legacy or devise to her in paragraph second of said will lapsed, and we think the

third paragraph should be read to be a devise or a bequest of his property to his children therein named, share and share alike. The difficulty arises because of the last clause in the third paragraph which is: ". . . and in the event that either of said children shall die without issue, then the interest of said child so dying shall go to the said children living, to share and share alike."

In construing a will it is the primary purpose of the courts to determine the intention of the testator from a consideration of the instrument as a whole, and to give effect to such intention, if it does not run counter to statute or to some well settled principle of law. The instrument should be viewed from the standpoint of the testator at the time of the drawing thereof. The will before us was drawn in 1920, at a time when his family consisted of a wife and six children, all of whom survived him except his wife. It is a reasonable presumption that he thought all the objects of his bounty would survive him. Forgetting the second paragraph of the will, it is certain that he intended that his property "shall be divided equally, to share and share alike, between our children, as follows:" (naming all six of them). This evidences his intention not to prefer one or more of his children over any other; "to share and share alike" means to be divided equally among them, which could not be done if the next clause means what appellees contend and the court held, that a child without issue, at the date of the death of the testator, would take a determinable or contingent fee in his share of the estate, dependent upon the birth of issue thereafter and, perhaps, living at the date of the death of such child. What we think the testator meant by the last clause of the third paragraph was that if any child should die without issue before his (testator's) death, such child's interest or share in said estate should "go to the said children living, to share and share alike." And this too whether "the said children living" have issue or not at the death of any child without issue before the testator's death. The same thing would have been true, if the testator's wife had survived him, but the vesting of title in the children would have been postponed until her death, and the defeasance clause in paragraph

third would have meant dying without issue before her death.

We have many times so construed similar language in wills coming before this court. *Harrington* v. *Cooper,* 126 Ark. 53, 189 S. W. 667; *Wilkins* v. *Eanes,* 126 Ark. 339, 190 S. W. 99; *Horrocks* v. *Basham,* 139 Ark. 116, 213 S. W. 372; *Ramseur* v. *Belding,* 206 Ark. 415, 175 S. W. 2d 977. In the Belding case last cited, item five of the will provided: ''All of the remainder of' my estate, both real, personal and mixed, is to be divided equally between my son, Miller G. Belding, and my daughter, Martha Belding Bradshaw. In the event of the decease of either, the heirs of their body will take his or her share *per stirpes.*'' We held that language to mean the decease of either prior to the death of the testator, and, having survived him, took the fee title. So, here, the testator, John S. Sanford, meant that if any child should die without issue before his death or before his wife's death had she survived him, the interest of such child should go to the other children named. In *Harrington* v. *Cooper, supra,* item second of the will provided: ''I give to my beloved wife Mary Jane Wood during natural life and to our daughter Georgia Anna Wood that portion of the tract of land on which we reside lying north and east of Jacks Creek containing about five hundred acres, including the dwelling and gin house and other improvements as a joint support for my wife and daughter during the lifetime of my wife and at the death of my wife I desire and intend that my daughter, Georgia Anna Wood, shall take in her own right the entire interest should she survive her mother, and should my said daughter, Georgia Anna Wood, die childless, then in that case the whole shall revert to my estate and be equally divided between my other children or their descendants of the same, the children of such as may be dead taking the interest that the parent would be entitled to if living.'' In construing this paragrap of the will, the late Judge HART, speaking for the court, said: ''Bearing in mind the settled rules of construction of wills just referred to and that the law favors the vesting of estates as early as possible, it will be seen that the first part of the clause just quoted gives to the

wife of the testator a life estate in the property and that that part which reads 'and at the death of my wife I desire and intend that my daughter, Georgia Anna Wood, shall take in her own right the entire interest should she survive her mother,' devised to the daughter a fee simple estate to take effect on the death of her mother. It will be noted that this clause is followed by a defeasance clause which reads as follows: 'And should my said daughter, Georgia Anna Wood, die childless and in that case the whole shall revert to my estate and be equally divided between my other children and their descendants of the same, the children of such as may be dead taking the interest that the parent would be entitled to if living.'

"It seems clear that the defeasance relates to the time of the death of the mother of appellants. That is the time fixed for her remainder interest to take effect. The words 'die childless' mean without having had or without leaving a child. In this way and in no other can every clause of the will be harmonized and have force and effect. It is perfectly clear that the testator intended that his daughter, Georgia Ann, should take a fee simple when he used the words, 'shall take in her own right the entire interest,' and it is also clear that he intended the estate to vest when her mother died by using the words, 'should she survive her mother.' The last clause already quoted by using the words 'die childless,' etc., means that if Georgia Anna should die without having a child or leaving a child before her mother's death, that the whole shall revert to the testator's estate and be equally divided among the testator's other children. In short, it meant that the remainder in fee should be vested in Georgia Anna at her mother's death and in case Georgia Anna should die without leaving a child before her mother's death the estate should revert to the testator's estate and be divided among his other children. This is in application of a rule that where an estate is devised to one for life, with remainder to another, with the further provision that, if the remainderman should die without having a child, then to a third person, the words 'die without

having a child' are restricted to the death of the remainderman before the termination of the particular estate."

We think it clear that the testator intended to divide his property equally among his children "to share and share alike," they surviving him, or his wife, had she survived him, whether any of them had issue or not at the time of distribution, and a division on the basis of the court's holding is not an equal division, since four of the children took their shares in fee immediately on the death of their father, they having issue, at that time, while two of them took only a determinable or contingent fee, depending on issue in the future. Here, these two without issue died six years after their father's death. They might have lived 10, 20, 30 or 40 years after his death, during which time it is easy to perceive the uncertainty of the title to their shares of said estate and their impotency to hold, use, sell or enjoy same. The law favors the early vesting of estates and where a clear fee is given in one clause of a will, which it does in this case, it may not be cut down to a life estate, or other lesser estates, unless the intention to do so is clearly indicated by the language used. *Bernstein* v. *Bramble*, 81 Ark. 480, 99 S. W. 682, 8 L. R. A., N. S., 1028, 11 Ann. Cas. 343; *Baum* v. *Fox*, 192 Ark. 406, 91 S. W. 2d 601; *Ramseur* v. *Belding, supra.*

The decree is accordingly reversed and the cause remanded with directions to sustain the demurrer, and for further proceedings not inconsistent with this opinion.