DYER v. LANE.

4-6438                                    151 S. W. 2d 678

Opinion delivered May 26, 1941.

---

[3] Davis has been divorced by his wife four or five years.

*Holland & Taylor,* for appellant.

*C. M. Buck,* for appellee.

HOLT, J.  G. A. Dyer died testate May 30, 1929.  He owned a tract of land in Mississippi county the title of which is involved here.  He left surviving his widow,

Grace G. Dyer, and a son, Haskell A. Dyer. His widow and son, appellants here, entered into a written contract with appellee, Will Lane, to sell to him the land above referred to. Lane refused to accept warranty deed from them to the land for the reason that they could not convey fee simple title. March 25, 1941, appellants sued appellee to enforce specific performance of the contract. The trial court found the issues in favor of appellee and dismissed appellants' complaint for want of equity. This appeal followed.

G. A. Dyer's will contained the following provisions: "I, G. A. Dyer, give to my wife, Grace G. Dyer, all my possessions and valuables, regardless of what and where they may be. The possessions and valuables shall be the property of my wife, Grace G. Dyer, during her single life. Should she marry she shall retain half of my possessions and valuables, the other half going to my son, Haskell A. Dyer.

"Upon the death of my wife, Grace G. Dyer, all my possessions and valuables shall become the property of my son, Haskell A. Dyer.

"If my son, Haskell A. Dyer, dies prior to my wife, Grace G. Dyer, all my possessions and valuables shall become the property of my wife, Grace G. Dyer; and she, Grace G. Dyer, shall retain full possession of my possessions and valuables during her life, after which all of my possessions and valuables shall become the property of the heirs of my son, Haskell A. Dyer. If my son, Haskell A. Dyer, shall leave no heirs, all my possessions and valuables shall revert to my heirs.

"This will shall be administered by my wife, Grace G. Dyer, and my son, Haskell A. Dyer."

The only question presented for our determination is: Does Haskell A. Dyer, the son, take a contingent or vested remainder in the real property of G. A. Dyer?

The court below held that Haskell A. Dyer's interest was that of a contingent remainderman and it is our view that this holding is correct.

It is a fundamental rule that in construing a will we try first to ascertain the intention of the testator and in arriving at this intention we take the will from its four corners and give consideration to the language used, and to give effect to such intention, if it can be done without doing violence to the law.

As was said in *Hurst* v. *Hilderbrandt,* 178 Ark. 337, 10 S. W. 2d 491, (quoting from *Booe* v. *Vinson,* 104 Ark. 439, 149 S. W. 524) : ''The purpose of construction of a will is to ascertain the intention of the testator from the language used, as it appears from the consideration of the entire instrument, and, when such intention is ascertained, it must prevail, if not contrary to some rule of law; the court placing itself as near as may be in the position of the testator when making the will.''

In the Hilderbrandt case, *supra,* this court in distinguishing between contingent and vested remainders quotes with approval 23 R. C. L. 500, § 32, which is as follows:

''The fundamental distinction between the two kinds of remainders is that, in the case of vested remainder, the right to the estate is fixed and certain, though the right to possession is deferred to some future period, while, in the case of a contingent remainder, the right to the estate as well as the right to the possession of such estate is not only deferred to a future period, but is dependent on the happening of some future contingency. The broad distinction between vested and contingent remainders is this: In the first there is some person in *esse* known and ascertained, who by the will or deed creating the estate, is to take and enjoy the estate, and whose right to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event, whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the particular estate upon which it depended shall have been determined, so that the estate in remainder will never take effect.''

It is apparent from the will before us that the testator's widow, Grace G. Dyer, has a life estate in all of his property, unless she should re-marry, in which event her life estate would be only one-half. The son, Haskell A. Dyer, takes all the real estate on the death of his mother, should he survive her. Should the mother survive her son, she takes all for her life and upon her death it goes to the heirs of her son. If the son should die without heirs, then on the mother's death the property reverts to the testator's heirs.

We think a proper construction of this will means, that the testator, when he speaks of "the heirs of my son, Haskell A. Dyer," meant the children of Haskell A. Dyer. Children may include adopted children as well as the children of one's body. *Deener* v. *Watkins,* 191 Ark. 776, 87 S. W. 2d 994. In *Powell* v. *Hayes,* 176 Ark. 660, 3 S. W. 2d 974, this court said: "In the alleged will under consideration in this case the testator gave the balance of his property to his wife and heirs, as the law provides. In its strict legal sense the word 'heirs' signifies 'those upon whom the law casts the inheritance of real estate.' But this construction will give way if there be upon the face of the instrument sufficient to show that it was to be applied to children. *Flint* v. *Wisconsin Trust Co.,* 151 Wis. 231, 138 N. W. 629, Ann. Cas. 1914B, p. 67, and case note at p. 70; Commentary on Wills by Alexander, vol. 2, par. 850-852, inclusive; Page on Wills, 2d ed., vol. 1, p. 1496, § 891, and 28 R. C. L., p. 248, § 216.

"The word 'heirs' has been held to be susceptible of two interpretations; the one which is technical, and embraces the whole line of heirs; the other, not technical, but common, and is used to denote the heirs who may come under the designation of heirs at a particular time, and it is often used in common speech as synonymous with children. *Turman* v. *White,* 14 B. Mon. (Ky.) 560, and *Feltman* v. *Butts,* (Ky.) 8 Bush 115. The holding of this court is in accordance with this rule. *Robinson* v. *Bishop,* 23 Ark. 378, and *Galloway* v. *Darby,* 105 Ark. 558, 151 S. W. 1014, 44 L. R. A. (N. S.) 782, Ann. Cas. 1914B, 712.

"Looking at the entire will and all the circumstances surrounding the testator, we think the word 'heirs,' as used in the will, manifestly meant children."

The statement in the will that if his son died without heirs the property should go to the testator's heirs would be meaningless, if the word "heirs," as used, did not mean children, as the son could not die without heirs, if the father had heirs at the son's death. In that case the son's heirs would be in the ascending line.

Looking to the entire contents of this will and thus construing the words "heirs of my son, Haskell A. Dyer," to mean the children of this son, necessarily Haskell A. Dyer's interest must be contingent because it cannot be known what children would survive the son until the death of the mother who holds the life estate. Haskell A. Dyer is still alive and, of course, may or may not have children during his mother's lifetime. The remainder could not vest in Haskell A. Dyer until the death of the mother, Grace G. Dyer. That is the time fixed for his remainder interest to take effect. *Harrington* v. *Cooper*, 126 Ark. 53, 189 S. W. 667, and *Bell* v. *Gentry*, 141 Ark. 484, 218 S. W. 194.

Finding no error, the decree is affirmed.